# In the Iowa Supreme Court

No. 23–0434

Submitted January 21, 2025—Filed March 7, 2025

**State of Iowa,**

Appellee,

vs.

**Jason Michael Pirie,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Greene County, Joseph McCarville, judge.

A defendant seeks further review of the court of appeals decision affirming his conviction and sentence for third-degree theft. **Decision of Court of Appeals and District Court Judgment Affirmed.**

Christensen, C.J., delivered the opinion of the court, in which all justices joined.

Leah Patton of Patton Legal Services, LLC, Ames, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

**Christensen, Chief Justice.**

A jury convicted the defendant of third-degree theft after a store's video footage captured the defendant placing a bottle of liquor under his shirt and leaving the store without paying for it. On appeal, he raises multiple challenges to his conviction and sentence. These include challenges to the district court's denial of his motion to recuse and motion for new trial. The defendant also maintains that the district court erred by admitting hearsay in the form of a police officer's testimony that the defendant's two friends provided a consistent version of events that differed from what the defendant told him about the day of the reported theft. Finally, the defendant challenges both the sentence imposed and the district court's choice to conduct the sentencing hearing remotely because the judge tested positive for COVID-19. The court of appeals rejected the defendant's arguments and affirmed his conviction and sentence. On further review, we agree.

The defendant presented no evidence that the judge's previous representation of him years before this case provided the judge with any extrajudicial information resulting in bias or prejudice. And while the officer's testimony about the friends' version of events was indirect hearsay, it was not prejudicial to the defendant because it was cumulative. Plus, there was already overwhelming evidence of the defendant's guilt. Additionally, the district court properly denied the defendant's motion for new trial based on the alleged unavailability of a witness to testify because he failed to raise it until after the jury returned its verdict. Similarly, the defendant waited to object to the remote nature of his sentencing until appeal, thereby failing to preserve error on this claim. Finally, the district court did not abuse its discretion by sentencing the

defendant to consecutive prison sentences for his theft charge and a probation violation.

## I. Background Facts and Proceedings.

On August 3, 2022, a Hy-Vee manager in Jefferson noticed that a bottle of silver Patrón tequila had disappeared without being paid for, prompting him to review the store's security camera video footage. The footage revealed an individual who police later identified as Jason Pirie manipulating the packaging on a bottle in the store's alcohol section before seemingly placing it under his shirt and leaving the store. Pirie never went through the checkout line, and additional footage shows him walking to his car in the parking lot with an unidentifiable item in his hand. The bottle was not accounted for by any purchase in the store's records, and staff discovered discarded Patrón packaging consistent with the packaging for the bottle that went missing.

Officer Nick Johnson responded to the store's call and reviewed the footage. The next day, he encountered Pirie with two friends in the parking lot of a different store. The same friends had arrived at Hy-Vee with Pirie but split up while they were inside the store. One of the two friends was wearing the same shirt as the one he was pictured in at Hy-Vee, and the group was using the same car that was pictured on the store's surveillance camera. Recognizing Pirie as the man who appeared to take the Patrón on the video footage despite Pirie's denial of being at Hy-Vee the day before, Officer Johnson sought an arrest warrant. The State charged Pirie with third-degree theft, an aggravated misdemeanor, for taking property not exceeding $750 while having two prior theft convictions. *See* Iowa Code § 714.2(3) (2022).

Six days before Pirie's trial was set to begin, he filed a motion to recuse the district court judge. In a hearing on the motion that same day, Pirie testified that

the judge had represented him in criminal matters in 2005 and 2016 before becoming a judge. When Pirie's attorney asked why he thought the judge would treat Pirie unfairly, Pirie stated, "Just a comment that he made to [my attorney] a year ago when I pled guilty to . . . this charge I'm on probation [for] right now." Pirie clarified that the judge had indicated it was a "[g]ood thing I took the deal because [the judge] knows me and it wasn't going to be good," and Pirie worried that the judge would "find me guilty no matter what."

The district court denied the motion, noting that Pirie filed the motion essentially on the eve of the January 24, 2023 trial despite that judge's involvement in the case since October 5, 2022. It also explained,

> I'm not denying I said something along the lines of it's a good thing he took the deal. I don't think that shows bias. I think it shows that apparently he got a good deal. And it also -- I don't recall the specifics, but it may also show that the defense attorney . . . did a good job for Mr. Pirie because in my view of the case, possibly I would have granted him a harsher sentence not because of any prior representation, but because of the facts of that particular case. . . . The trial next week is to a jury. I think the only possible bias or prejudice that could be present in that situation would be -- would come up at sentencing.

At trial, the jury heard testimony from the Hy-Vee manager who reviewed the store's camera footage and reported the theft to the police. The jury also observed multiple videos and still images from this footage. Additionally, Officer Johnson testified about his response to the reported theft, including his encounter with Pirie and his friends the day after the theft.

During Officer Johnson's testimony, the prosecutor asked him whether Pirie's friends provided him "with different versions of events." Pirie objected, arguing that anything the two friends told Officer Johnson was inadmissible hearsay. The district court overruled the objection, reasoning, "The only reason

the question is being asked is to see if they were consistent with each other, regardless of the truth. So for those reasons it's not hearsay."

The prosecutor subsequently asked Officer Johnson whether the two men "provide[d] you with consistent versions of events." This led to the following exchange between the prosecutor and Officer Johnson:

> [Prosecutor:] Did you then interview the Defendant?
>
> [Officer Johnson:] Yes, ma'am.
>
> [Prosecutor:] Did the Defendant tell you where he was the day before?
>
> [Officer Johnson:] No, ma'am.
>
> [Prosecutor:] Did he deny being at Hy-Vee the day before?
>
> [Officer Johnson:] Yes, ma'am.
>
> [Prosecutor:] Was his statement consistent or inconsistent with the version of events provided to you by [the other two men]?
>
> [Officer Johnson:] Inconsistent.

Pirie's attorney objected again, claiming that the State was trying to use Officer Johnson's testimony about the other men's statements "to show an inconsistency with the Defendant in this particular matter by saying that this is testimony that they gave and that is a true statement, therefore I don't have the opportunity to cross examine either of these two witnesses here today and that would become a hearsay." The district court overruled the objection, and the jury returned its guilty verdict later that day. Pirie was not present when the jury rendered its verdict because he absconded during jury deliberations and was later found in contempt of court.

Pirie filed a motion for new trial, asserting that a material witness who could not be located and subpoenaed before trial was now available. The district court held a combined hearing on Pirie's motion for new trial, contempt charge,

probation revocation, and sentencing remotely. There is nothing in the record indicating that the parties discussed having the hearing remotely with the district court and the district court's judgment entry simply states, "Today's hearing was held by Goto Meeting due to this judge having a positive Covid 19 test."

The district court denied Pirie's motion for new trial. Pirie stipulated to two prior theft convictions and was sentenced to a prison term not to exceed two years. The district court also ordered Pirie to serve this sentence consecutive to the 180-day sentence he received as part of his probation revocation.

Pirie timely appealed, and we transferred his appeal to the court of appeals. The court of appeals affirmed Pirie's conviction and sentence with one judge dissenting. The dissenting judge would have reversed the judgment and remanded for a new trial, concluding that "the district court erroneously admitted implied hearsay on the central issue of identification, which was prejudicial to Pirie." Further, the dissenting judge maintained that the district court erred by sentencing Pirie remotely without his consent. We granted Pirie's application for further review.

**II. Analysis.**

Pirie raises five issues on appeal. First, he argues that the district court should have granted his motion to recuse. Second, Pirie contends that the district court erred in allowing Officer Johnson's testimony about the consistency of the other men's statements when he found them the day after the reported theft. Third, he maintains that the district court should have granted his motion for new trial. Fourth, Pirie asserts that the district court violated his rights by conducting a remote sentencing proceeding without first obtaining his waiver of the right to in-person sentencing. Finally, he claims that the district

court abused its discretion by sentencing him to prison on the theft charge consecutive with a prison term for his probation violation. We address these issues in turn.

**A. Pirie's Recusal Motion.** Pirie maintains that the district court abused its discretion by denying his motion to recuse based on the judge's past representation of Pirie and a comment the judge allegedly made about Pirie in one of his previous cases. *See State v. Trane*, 984 N.W.2d 429, 433–34 (Iowa 2023); *Carter v. Carter*, 957 N.W.2d 623, 631 (Iowa 2021) ("We review a judge's decision on a motion to recuse for abuse of discretion."). A district court abuses its discretion by acting unreasonably or basing its decision on untenable grounds. *Trane*, 984 N.W.2d at 434. "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned . . . ." *Carter*, 957 N.W.2d at 643 (omission in original) (quoting Iowa Code of Judicial Conduct R. 51:2.11(A)).

Impartiality is the "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." *Id.* at 644 (quoting Iowa Code of Judicial Conduct, Terminology). As the party seeking recusal, Pirie "must show that the judge's 'alleged bias and prejudice must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from participation in the case.' " *Id.* (quoting *State v. Bear*, 452 N.W.2d 430, 435 (Iowa 1990)). Speculation is not enough, but speculation is all Pirie has in this case.

Pirie provides no evidence that the judge's previous representation of him in 2005 and 2016 had any bearing on this case, which is years removed from those cases. Nor does the record show that the judge's earlier representation

provided the judge with any information that would result in a ruling for reasons beyond what the judge learned from his participation in the current case. "To whatever extent these experiences educated [the] trial court on defendant's character, it provides no basis for prejudice requiring a different judge." *State v. Smith*, 282 N.W.2d 138, 142 (Iowa 1979).

Likewise, Pirie's contention that the judge told his current attorney in 2022 that it was a "[g]ood thing I took the deal because [the judge] knows me and it wasn't going to be good" does not show that the judge learned anything from an extrajudicial source or that it resulted in bias or prejudice. The judge explained that this comment was in reference to the fact that Pirie "got a good deal" and that "possibly I would have granted him a harsher sentence not because of any prior representation, but because of the facts of that particular case."

In summary, the judge's comment was based on the facts of that specific case, which does "not constitute a basis for a bias or partiality motion unless [it] display[s] a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). That display did not occur here. Notably, Pirie received a jury trial, and he did not renew his motion for recusal at sentencing despite the judge's recognition at the previous recusal hearing that the "only possible bias or prejudice that could be present in that situation would be -- would come up at sentencing." We affirm the district court's denial of Pirie's motion for recusal.

**B. Officer Johnson's Testimony.** Pirie asserts the district court erred by admitting Officer Johnson's testimony that Pirie's two friends provided consistent versions of events that differed from what Pirie told him because this was indirect or implicit hearsay. "We review the district court's evidentiary rulings on hearsay for errors at law." *State v. Thompson*, 982 N.W.2d 116, 121

(Iowa 2022). Inadmissible hearsay is prejudicial to Pirie, as the nonoffering party, "unless the record affirmatively establishes otherwise." *Id.* (quoting *State v. Newell*, 710 N.W.2d 6, 19 (Iowa 2006)).

Ordinarily, hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted. Iowa R. Evid. 5.801(*c*). But it can also be indirect when the testimony regarding information that the witness received from another person during an investigation is offered as proof of the facts asserted. *See State v. Judkins*, 242 N.W.2d 266, 267–68 (Iowa 1976). For example, in *State v. Judkins*, we held that a district court erred by admitting testimony from the State's handwriting expert that the defendant's expert confirmed his opinion because it circumvented the hearsay rule by allowing the State to indirectly provide evidence of the defense expert's opinion. *Id.* at 267–69.

Similarly, Officer Johnson's testimony constitutes indirect hearsay. After testifying that the two friends provided consistent versions of events that included going to Hy-Vee on the day of the theft, the prosecutor asked Officer Johnson if Pirie denied being at Hy-Vee that day, and Officer Johnson confirmed Pirie's denial. Directly after that, the prosecutor elicited testimony from Officer Johnson that Pirie's story was inconsistent with the two friends. This implied that the two friends admitted to being at Hy-Vee the day before and, thus, Pirie was also at Hy-Vee that day despite his statement to the contrary.

The prosecutor characterized the testimony that way in closing, stating, "[The two friends] tell[] a story to law enforcement and their version of events, it matches. [Pirie]'s story does not. The three individuals are in that same vehicle, that red vehicle, that red Sedan. [Pirie] denies his presence there at Hy-Vee, why?" The problem is that neither of these friends testified as witnesses, so Officer Johnson's testimony "circumvent[ed] the hearsay rule and present[ed] the

jury with information from unsworn, out-of-court sources." *State v. Huser*, 894 N.W.2d 472, 497 (Iowa 2017).

Nevertheless, "[t]he rule prohibiting hearsay evidence only forbids an out-of-court statement used 'to prove the truth of the matter asserted in the statement.' " *State v. Dessinger*, 958 N.W.2d 590, 603 (Iowa 2021) (quoting Iowa R. Evid. 5.801(*c*)). The State maintains Officer Johnson's hearsay testimony "was offered to show that Pirie (and only Pirie) had a reason to deny being at Hy-Vee—because only Pirie knew enough to worry about evidence tying him to a theft, because it was Pirie who committed it." Yet, it could only prove Pirie's denial was false by proving that his friends' statements were true.

The State's proffered rationale aside, we conclude from the record that the State offered Officer Johnson's testimony to provide the jury with otherwise inadmissible evidence that Pirie was at Hy-Vee on the day of the theft. *See id.*; *see also Hawkins v. Grinnell Reg'l Med. Ctr.*, 929 N.W.2d 261, 265–66 (Iowa 2019) ("We do not rely on the purpose urged by the party offering the alleged hearsay; rather we look at the true purpose for which the party offered the testimony."). Although the testimony was hearsay, the State can overcome our presumption that it was prejudicial to Pirie through overwhelming evidence of his guilt, showing that the wrongly admitted evidence was cumulative, or showing that the improperly admitted evidence went to an uncontested or moot point. *State v. Skahill*, 966 N.W.2d 1, 15 (Iowa 2021). It demonstrates all three here.

Not only did the jury hear testimony from the store manager about the missing Patrón, but it also had quality video footage from the store's surveillance cameras. This footage shows a man in a white shirt and blue jeans entering the liquor section, removing a bottle from the cooler, playing around with the bottle in the aisle, and setting it down briefly before returning to stick it under his shirt

and walk away. The jury could easily identify Pirie as this man, especially with the additional still image of the video footage that shows him up close as he's exiting the store and the other video footage showing him walking in the parking lot with an object resembling a bottle in his hand. Combine this with the store manager's testimony that he tracked Pirie's movements through the store on video surveillance to confirm that Pirie never purchased anything and did not interact with his two friends that he entered the store with until they were all reunited in the parking lot and there was overwhelming evidence of Pirie's guilt.

Moreover, the challenged evidence was harmless because it was cumulative with other trial evidence. *See State v. Russell*, 893 N.W.2d 307, 318 (Iowa 2017) ("[T]his testimony was merely cumulative of the evidence at trial and was therefore harmless."); *State v. Elliott*, 806 N.W.2d 660, 669 (Iowa 2011) ("One way to show the tainted evidence did not have an impact on the jury's verdict is to show the tainted evidence was merely cumulative."). The store manager had already testified that the two men arrived at the store with Pirie on the day of the theft before reuniting back at the car. The jury saw video footage and still images of the men leaving Hy-Vee that corroborate this. Officer Johnson's testimony implying that the men were at Hy-Vee on the day of the theft was merely cumulative of other evidence.

Our task in every case is to determine whether the district court committed error and whether that error was prejudicial to the administration of justice—that is, whether the error undermined confidence in the trial mechanism or the jury's determination of guilt. Officer Johnson's backdoor hearsay testimony that Pirie was present at the Hy-Vee grocery store on the date of the theft was merely cumulative evidence on a point on which there was overwhelming pictorial and video evidence and that defense counsel did not even

contest during trial. Any error thus did not affect the underlying fairness of the trial or undermine confidence in the result and is thus harmless.

**C. The District Court's Denial of Pirie's Motion for New Trial.** Pirie contends the district court abused its discretion by denying his motion for a new trial due to the unavailability of a material witness. *See State v. Uranga*, 950 N.W.2d 239, 243 (Iowa 2020) (noting that we generally review rulings on motions for new trial for an abuse of discretion). After the jury rendered its guilty verdict, Pirie sought a new trial because he wanted one of the friends who was with him at Hy-Vee to testify and could not locate that friend to subpoena him. However, Pirie testified at the motion hearing that he found and spoke with this friend the night before his trial. He asserts that this friend's testimony was material to the case, so the district court should have granted his motion for new trial under Iowa Rule of Criminal Procedure 2.24(2)(*b*)(9) (2022), which allows the district court to grant a new trial "[w]hen from any other cause the defendant has not received a fair and impartial trial."

As crucial as Pirie claims this friend was to his case, he never informed the court that he wanted this friend to testify or that he was having an issue subpoenaing the friend. Nor did he request a continuance or any other potential remedy. Instead, he waited until the jury had already found him guilty to raise this complaint. At that point, it was too late. *See State v. Steltzer*, 288 N.W.2d 557, 559 (Iowa 1980) ("Objections should be raised at the earliest time at which error became apparent in order to properly preserve error. Motion for new trial ordinarily is not sufficient to preserve error where proper objections were not made at trial." (citation omitted)); *see also State v. Newman*, 326 N.W.2d 788, 793 (Iowa 1982) ("This issue was first raised in defendant's motion for a new trial. His complaint came too late, and we therefore consider it waived."). Pirie

failed to preserve error on this issue, so we affirm the district court's denial of his motion for new trial.

**D. The District Court's Choice to Conduct Sentencing Remotely.** Pirie challenges the district court's decision to conduct his sentencing hearing remotely without the parties' consent or his waiver of in-person sentencing. The State contends that Pirie failed to preserve error on this claim because he never objected to the remote proceeding, while Pirie responds that the rules of error preservation do not apply. We agree with the State.

We recently clarified the scope of our error preservation requirements for sentencing challenges in *State v. Chawech*, 15 N.W.3d 78, 83–86 (Iowa 2024). "Of particular importance here, Iowa caselaw shows that sentencing challenges are often excepted from our error preservation requirements," and these exceptions "generally fall into one of two categories." *Id.* at 84. The first category involves challenges to procedurally defective sentences and involves "claims that the court abused its discretion through its choice of sentence or through the reasons it gave for that choice." *Id.* This applies to Pirie's later claim that the court abused its discretion by sentencing him to prison time for the theft to be served consecutive with his sentence for violating probation. The second excepted challenge is a claim of illegal sentence in which the defendant is arguing "that the court lacked the power to impose the sentence or that the sentence itself is somehow inherently legally flawed, including claims that the sentence is outside the statutory bounds or that the sentence itself is unconstitutional." *Id.* at 85 (quoting *Anderson v. Iowa Dist. Ct.*, 989 N.W.2d 179, 181 (Iowa 2023)). Pirie is not claiming that on appeal.

In *Chawech*, we also recognized that certain sentencing challenges are subject to error preservation rules. *Id.* "For instance, when our rules or statutes

provide a clear mechanism through which the defendant can raise an issue before the district court, we have sometimes required the issue to be timely raised." *Id.* Though not a rule or statute, there was a supervisory order in effect at the time that provided clear instructions on how to challenge a remote sentencing proceeding.

In relevant part, that order declared,

> All contested court proceedings are presumed to occur in person. A contested testimonial proceeding may occur by videoconference or telephone *only with the consent of all parties* and in the court's discretion.
>
> . . . .
>
> . . . . *Any party may file a resistance to a proceeding being conducted remotely and request that the proceeding occur in person.* If the court denies the request, the court shall state the reasons for the denial with particularity.

Iowa Sup. Ct. Supervisory Order, *In the Matter of Remote Judicial Proceedings* 1 (Nov. 4, 2022) (emphasis added), https://www.iowacourts.gov/collections/770/ files/1700/embedDocument/ [https://perma.cc/A39H-P4D7]. Yet Pirie never filed a resistance despite the supervisory order's instructions to do so, denying the district court the opportunity to consider his request and potentially state the reasons for denying it for our review. *See id.* Consequently, Pirie failed to preserve error on his challenge to his remote sentence.

Since the COVID-19 pandemic, other states have similarly addressed this issue and reached the same conclusion. For example, the Court of Appeals of Michigan held that a defendant failed to preserve error on his claim that he was entitled to resentencing after he was sentenced remotely because he "did not raise the issue of his physical presence at his sentencing and made no objection to appearing remotely via Zoom." *People v. Anderson*, 989 N.W.2d 832, 839 (Mich. Ct. App. 2022) (per curiam). And a New York appellate court concluded,

"Defendant's claim that the remote sentencing proceeding violated [New York's rules of criminal procedure] . . . does not qualify as a mode of proceedings error obviating the need for preservation." *People v. Lomack*, 192 N.Y.S.3d 703, 706 (App. Div. 2023).

And though the record before us is limited concerning the parties' discussions about the remote nature of the sentencing hearing, we can still infer consent. The district court stated on the record at the start of the hearing that it was being held remotely because the judge "tested positive for Covid 19." The written order echoes that, but it is silent about any discussions the parties had beforehand about holding the hearing remotely. Despite that silence, the parties must have discussed holding the hearing remotely off the record because the district court observed, "Everyone is present by Go To meeting."

We can also discern from the transcript that the parties were not all present in the same room because Pirie closed the laptop that he was using to appear remotely while the district court was still sentencing him, and the prosecutor had to call someone who was with Pirie to ensure that Pirie received the rest of his sentence. Thus, the district court and the parties had to have coordinated before the hearing so that everyone could access the hearing remotely from their separate locations. It certainly would have been better for the district court to establish this on the record, but this is not a reason to reverse and remand for resentencing.

Accordingly, we reject Pirie's challenge to the district court's choice to conduct the sentencing hearing remotely. In doing so, we stress that Pirie was able to exercise his right to allocution and have his mother testify on his behalf, "which the court meaningfully entertained." *State v. Emanuel*, 968 N.W.2d 919, 922 (Iowa Ct. App. 2021). He does not suggest any irregularities with the

sentencing other than that he was not physically present in the courtroom at the time of sentencing.

**E. Pirie's Sentences.** Pirie argues that the district court abused discretion "for theft of a bottle of liquor worth about $55 and ordering that the prison sentence for the theft charge be served consecutively to the probation violation." "A sentencing court's decision to impose a specific sentence that falls within the statutory limits 'is cloaked with a strong presumption in its favor, and will only be overturned for an abuse of discretion or the consideration of inappropriate matters.'" *State v. Schooley*, 13 N.W.3d 608, 616 (Iowa 2024) (quoting *State v. Damme*, 944 N.W.2d 98, 105–06 (Iowa 2020)). Pirie "must overcome the presumption in favor of the sentence by affirmatively demonstrating the court relied on an improper factor" or based its decision on clearly untenable grounds. *Damme*, 944 N.W.2d at 106.

The factors that a district court must consider in fashioning a defendant's sentence include "the nature of the offense, the attending circumstances, the age, character and propensity of the offender, and the chances of reform." *Id.* (quoting *State v. Formaro*, 638 N.W.2d 720, 725 (Iowa 2002)). It must also "consider the defendant's prior record of convictions or deferred judgments, employment status, family circumstances, and any other relevant factors, as well as which of the sentencing options would satisfy the societal goals of sentencing." *Id.* (emphasis omitted) (quoting *Formaro*, 638 N.W.2d at 725). Those goals "are to provide maximum opportunity to rehabilitate the defendant and to protect the community." *Id.*; *see also* Iowa Code § 901.5.

Pirie takes issue with how the district court weighed certain factors, claiming it placed too much weight on Pirie's criminal history and not enough on mitigating factors, like Pirie's caretaking responsibilities for his grandmother, the

nonviolent nature of the offense, and his medical issues and need for substance abuse treatment. We disagree. After hearing arguments from both sides and reviewing Pirie's criminal history, Pirie and the district court had the following exchange:

> MR. PIRIE: I just hope you take into consideration to give me one more chance and that you didn't wake up this morning knowing you were going to send me to prison. Just give me one more chance to prove myself, that's all I ask.
>
> THE COURT: Okay. Well, I will state I did not wake up this morning thinking I would send you to prison but then I read your criminal history and that changed my mind.
>
> MR. PIRIE: I know I got a bad history but, I mean --
>
> THE COURT: Yes. And it doesn't seem to be changing and it's consistent and it's long and you've been to prison I think four or five times.
>
> MR. PIRIE: Right and I don't think prison is a fair punishment. I mean, and I know I didn't --
>
> THE COURT: Mr. Pirie, I get to talk now, okay?
>
> MR. PIRIE: Okay. Sorry about that.
>
> THE COURT: Your act of leaving the courtroom before the jury came back, I think was in fact contentious. . . . There's not going to be any extra punishment for what I believe was contemptuous conduct so the contempt hearing will be dismissed. . . . I do find that you're adjudicated guilty of the crime of theft in the third degree.

After discussing restitution, the district court announced,

> Defendant is committed to the custody of the director of the Iowa Department of Corrections for an indeterminate term not to exceed two years with credit for time served. . . . The sentence shall run consecutively to the sentence of incarceration imposed in case number AGCR014826. The sentences run consecutive because they are separate and distinct crimes. The theft was committed when Defendant was on probation in AGCR. Also, Defendant is a habitual felon, has a long criminal history. The Court imposes this sentence because it provides for the Defendant's rehabilitation and the protection for the community.

It also noted that it had considered the parties' sentencing recommendations, "as well as the other factors stated on the record, including Defendant's age [and] Defendant's criminal history" in determining the sentence.

Nothing about this was inappropriate. The district court's statement that it would not have sentenced Pirie to prison if not for his criminal history indicates that it did consider the other factors presented. But Pirie has an extensive criminal history, which the State discussed in detail at the hearing. He has been incarcerated in the past, and he committed the theft in this case while he was on probation. It was reasonable for the district court to conclude that incarceration best served the sentencing goals of maximum rehabilitation and community protection. Moreover, the district court gave sufficient reasons for imposing incarceration and consecutive sentences. *See State v. Evans*, 672 N.W.2d 328, 331–32 (Iowa 2003) (explaining that the sentencing court must state the reasons for the chosen sentence and for imposing consecutive sentences on the record in a manner sufficient to allow for appellate review). Consequently, we affirm Pirie's sentence.

**III. Conclusion.**

For these reasons, we affirm the court of appeals decision and the district court's judgment and sentence.

**Decision of Court of Appeals and District Court Judgment Affirmed.**